# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CARLA R. DODD**, | Case No. 3:15-cv-00270-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN,**<br>Acting Commissioner of Social Security, | |
| Defendant. | |

Lisa R.J. Porter, JP Law PC, 5200 SW Meadows Road, Suite 150, Lake Oswego, OR 97035.
Attorney for Plaintiff.

Billy J. Williams, Acting United States Attorney, and Janice E. Hebert, Assistant United States
Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite
600, Portland, OR 97204-2902; Lisa Goldoftas, Special Assistant United States Attorney, Office
of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S
221A, Seattle, WA, 98104-7075.
Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Carla Rae Dodd ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's

application for Supplemental Security Income ("SSI"). For the following reasons, the

Commissioner's decision is REVERSED.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id*; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

**A.  Plaintiff's Application**

Plaintiff protectively filed an application for SSI on April 28, 2011 alleging disability beginning on July 12, 2004. AR 141-45. She was 44 years old at the alleged disability onset date. Plaintiff alleges disability due to fatigue, poor memory, inability to concentrate, shoulder pain,

depression, obesity due to seizure disorder, hypothyroidism, pre-diabetes, and high blood

pressure. AR 35-37. The Commissioner denied her application initially and upon

reconsideration; thereafter, she requested a hearing before an Administrative Law Judge

("ALJ"). AR 81-106, 118-20. An administrative hearing was held on February 26, 2013. On

March 20, 2013, the ALJ found Plaintiff not disabled as of April 28, 2011, the date Plaintiff filed

her application. AR 12-26. The Appeals Council denied Plaintiff's request for review, making

the ALJ's decision the final decision of the Commissioner. AR 1-4. Plaintiff now seeks judicial

review of that decision.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
significant mental or physical duties done or intended to be done for pay
or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
such work, she is not disabled within the meaning of the Act. 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An

impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ applied the sequential process. AR 17-22. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity after the application date of April 28, 2011. AR 17. At step two, the ALJ found that Plaintiff has the following severe impairments: seizure disorder, obesity, hypothyroidism, and residual symptoms resulting from a motor vehicle accident including shoulder pain, depression, and somatization disorder. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the specific impairments listed in the regulations. AR 17-19. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, with some limitations on work activity. AR 19. Specifically, the ALJ found:

> (1) the claimant is limited to lifting and carrying 10 pounds
> frequently and 20 pounds occasionally; (2) the claimant has no
> limitations on sitting, standing, and walking; (3) the claimant
> should not perform any climbing of ladders, ropes, or
> scaffolds; (4) the claimant should avoid hazards such as work at
> unprotected heights or near dangerous machinery; (5) the claimant
> should avoid exposure to extremes of hot and cold; (6) the
> claimant is able to remember, understand, and carry out simple
> tasks typical of occupations with an svp of 1 or 2; and (7) the
> claimant should not perform work that requires operations of
> motor vehicles as a primary portion of the occupation.

*Id*.

At step four, the ALJ found that Plaintiff was capable of performing past relevant work.[1] AR 21-22. The ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy, including circuit board assembler, or small products assembler. *Id*. The ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, after the application date of April 28, 2011. AR 22.

## DISCUSSION

Plaintiff seeks review of the determination by the ALJ that she has not been under a disability after April 28, 2011. Plaintiff argues that the ALJ erred by: (A) improperly finding Plaintiff's subjective symptom testimony not fully credible; (B) improperly failing to credit the lay witness testimony of her father, Bobby Blevins; and (C) improperly rejecting the medical opinion of her treating physician, Christina Milano, M.D.

### A.  Plaintiff's Credibility

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons, supported by substantial evidence, for rejecting her subjective symptom statements regarding the severity of her impairments. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could

---

[1] Plaintiff performed past relevant work as a circuit board assembler and a small products assembler. AR 21-22, 34-35.

reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a

negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid[,] [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . ." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

Plaintiff testified at the hearing that her inability to work full time is a result of: (1) extreme fatigue; (2) an inability to retain information; (3) poor concentration; and (4) shoulder pain. AR 35-37. Plaintiff testified that her memory is very selective, and although she can remember her social security number and son's birthday, she is unable to remember her address of three years. AR 35-36. She stated that she primarily attributes her fatigue and inability to retain information to her seizure medication, with secondary causes of a thyroid condition, pre-diabetes, high cholesterol medication, high blood pressure, and rapid weight gain. AR 36. Plaintiff testified that a daily dose of Adderall helps but that she has become immune to it and still falls asleep in the afternoon. AR 36-37. She also testified that she has shoulder pain that prevents her from performing the eight hours per month of required work for her community housing such as gardening. AR 37.

The ALJ found that the seizure disorder, obesity, hypothyroidism, and residual symptoms from a motor vehicle accident including shoulder pain, depression, and somatization disorder were severe impairments, but that there is insufficient evidence to show that the impairments

preclude Plaintiff from engaging in all basic work activity. AR 17-19. The ALJ found the

Plaintiff to be only a "partially credible witness." AR 21. In support of this conclusion, the ALJ

points to (1) treatment notes reporting improvement of Plaintiff's medical and physical

impairments; (2) Plaintiff's exaggeration of symptoms; and (3) inconsistency between treatment

notes and the ALJ's personal observations of Plaintiff. AR 20-21.

### 1. Improvement of Plaintiff's Impairments

The ALJ found that Plaintiff's positive response to treatment reflected negatively on her

testimony that she was unable to work due to her impairments. AR 21. Impairments that can be

controlled with medication are not disabling. *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th

Cir. 2006). Here, the ALJ found that Plaintiff's seizure disorder was controlled by medications,

as she has had no seizures after 2004, and her hypothyroidism was also treated. AR 20, 344, 384.

The ALJ noted that while Plaintiff previously had some fatigue as a side effect of medication for

depression, Plaintiff was taking Adderall as prescribed with excellent response. AR 21.

Specifically, the ALJ pointed to treatment notes from July of 2012 that stated Plaintiff was

"active, motivated, getting out of house and maintaining household." AR 21, 415.

The ALJ's conclusion is supported by substantial evidence in the record, particularly the

evidence in Dr. Milano's treatment notes in 2012 and 2013 showing that although Plaintiff

sought treatment for various issues, her fatigue and dysthymia generally improved with Adderall

and she rarely complained of fatigue. *See* AR 422-23 (April 17, 2012 chart notes, noting

Plaintiff's "excellent response" to Adderall, that Plaintiff's dysthymia is "still responding highly

favorably" to Adderall, and that Plaintiff is "able to get out of bed, shower, dress, clean house,

visit with friends" and is considering taking a water aerobics class); AR 420-21 (June 6, 2012

chart notes, noting Plaintiff's "excellent improvement of dysthymia," "no contraindications to

continuing" Adderall, and that Plaintiff continued "to have drastic improvement in depression

PAGE 9 – OPINION AND ORDER

symptoms" with Adderall); AR 415 (July 5, 2012 chart notes, noting that Plaintiff was taking Adderall as prescribed "still w[ith] excellent response – active, motivated, getting out of house and maintaining household"); AR 413 (September 27, 2012 chart notes, noting Plaintiff's mood was "still improved" with Adderall, and was "glad it is still working;" refilling the Adderall); AR 410 (January 2, 2013 chart notes, noting that Plaintiff still felt Adderall was effective). On January 2, 2013, Plaintiff did, however, indicate that her initial response to Adderall had faded slightly. AR 410.

On this record, it was reasonable for the ALJ to conclude that Plaintiff's impairments have improved. The ALJ accurately characterized the medical records regarding Plaintiff's fatigue and improvement on Adderall. AR 20-21. For the period of time under ALJ review, there are treatment notes from six separate appointments with Dr. Milano, all but one of which indicate Plaintiff's fatigue greatly improved with Adderall. AR 410, 413, 415, 420-23. Additionally, when Plaintiff mentioned that the initial response had "faded slightly," she stated this in the context of the Adderall still feeling "effective in improving overall capacity to conduct" her activities of daily living. AR 410. Thus, the ALJ's interpretation of the evidence as not supporting Plaintiff's testimony that she continues to suffer from debilitating fatigue is rational. At most, the report from January 2 supports a possible second rational interpretation of the evidence, that Plaintiff was beginning to find a slight decrease in the efficacy of medication, but "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679. Thus, Plaintiff's improvement after medication is a clear and convincing reason provided by the ALJ to discount Plaintiff's credibility regarding the severity of her symptoms.

### 2.  Exaggeration of Plaintiff's Symptoms

The ALJ noted that Plaintiff was observed to exaggerate impairments, which the ALJ found to erode Plaintiff's credibility. The ALJ gave "significant weight" to the observations of Gary Sacks, M.D. regarding Plaintiff's possible exaggeration of symptoms. AR 20-21. In June 2011, Dr. Sacks performed a consultative examination of Plaintiff and indicated that Plaintiff complained of memory loss "in excess of observed impairment." AR 346. Dr. Sacks also noted that Plaintiff's "performance on brief mental status exam seemed somewhat dubious" based upon poor effort and showed "a very limited performance for someone who drove an automobile to the office." *Id.* Observations that a claimant is exaggerating symptoms is a clear and convincing reason to discount a claimant's credibility, and the ALJ's conclusion that Dr. Sacks's reports support discounting Plaintiff's credibility is supported by substantial evidence in the record. *See Smolen*, 80 F.3d at 1284 (an ALJ may consider other inconsistent or less than candid statements).

### 3.  ALJ's Personal Observations of Plaintiff

In discounting Plaintiff's credibility, the ALJ stated:

> At the hearing on February 26, 2013, the claimant testified that her primary impairment is fatigue. However, in treatment notes, while noting the claimant's complaints, rarely make any observations of the claimant appearing fatigued or tired looking, which is inconsistent to how the claimant presented herself at the hearing.

AR 21. From this comment, it appears that the ALJ is, in part, discounting Plaintiff's credibility because Plaintiff appeared extremely fatigued at the hearing, whereas her treating physicians did not note such an extreme appearance of fatigue during the relevant time period, thus indicating Plaintiff's appearance at the hearing was exaggerated. The parties dispute the propriety of the ALJ's personal observations.

Personal observations by the ALJ may be appropriate in assessing credibility.

*See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (the inclusion of the ALJ's personal observations does not render a decision improper when the ALJ comments on the fact that the claimant does exhibit symptoms that are inconsistent with the medical evidence); *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 and n.8 (9th Cir. 1989) (noting the ALJ's specific observations of "posturing and bizarre behavior" during the hearing supporting the ALJ's conclusions that the claimant was "overdramatizing" his pain and that an ALJ's credibility determination that a claimant is dishonestly attempting to display symptoms is within the province of the ALJ and a clear and convincing reason to discount a claimant's credibility). Here, the ALJ does not describe Plaintiff's appearance at the hearing or how it purportedly presented as fatigued or provide any specific observations regarding how Plaintiff's alleged fatigue manifested in her appearance at the hearing or why he believes such a manifestation to be exaggerated. The fact that no practitioner mentioned Plaintiff appearing fatigued, in and of itself, is not a clear and convincing reason to discredit Plaintiff's credibility. Because the ALJ has provided two other clear and convincing reasons, however, the ALJ's credibility determination is not in error.

## B.  Mr. Blevins's Lay Witness Testimony

Plaintiff argues that the ALJ improperly ignored the testimony of her father, Bobby Blevins. Mr. Blevins testified at Plaintiff's 2013 hearing and described Plaintiff's limitations. AR 45-50. The ALJ has a duty to consider lay witness testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (lay testimony as to "symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account"); *Hansel v. Astrue*, 2008 WL 4418141 at *8 (D. Ariz. Sept. 29, 2008) ("The oral testimony or

written statements of lay witnesses cannot be discounted by an ALJ unless he provides reasons that are germane to each witness."); C.F.R. § 404.1513(d), 416.913(d).

The ALJ must give specific reasons for discounting the testimony of lay witnesses regarding claimant's physical condition. *Dodrill*, 12 F.3d at 919. Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted). An ALJ's failure to consider and comment on competent lay testimony requires reversal unless the reviewing court can "confidently conclude" that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination. *Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir. 2006).

The ALJ's opinion stated that "There are no Third Party Statements to consider" and provided no explanation for ignoring Mr. Blevins's testimony. AR 21. The Commissioner argues that the ALJ was not required to address Mr. Blevins's testimony because it was not probative and did not relate to the relevant time period. The Court disagrees. Mr. Blevins's testimony did in fact address the relevant time period and discussed evidence before the relevant time period by way of comparative example.

Mr. Blevins discussed Plaintiff's low energy and poor memory. AR 47-49. Mr. Blevins testified that Plaintiff lived with him for four years after 2004 and during that time slept as much as 18 hours per day. AR 45-47. He also stated that he now sees his daughter every three to four days and speaks to her on the phone about once a week. AR 45. Mr. Blevins testified that he has not noticed a change in her current energy level from her energy level during the time she resided with Mr. Blevins. AR 47. He stated that Plaintiff is always without energy and seldom participates in family activities. *Id.* Additionally, Mr. Blevins stated that Plaintiff has a very bad

memory and Plaintiff's memories of conversations were constantly fuzzy. AR 47, 49.

Mr. Blevins's report of Plaintiff's functional abilities involved Mr. Blevins's observations of

Plaintiff, including her symptoms, limitations, abilities, and daily living activities. Despite this

report, the ALJ did not address Mr. Blevins's testimony when determining Plaintiff's RFC.

The Commissioner also argues that even if the ALJ should have considered Mr. Blevins's

testimony, any error would have been harmless. Under the record in this case, however, the

Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the testimony,

could have reached a different disability determination." *Stout.*, 454 F.3d at 1056. Thus, the

ALJ's error in ignoring Mr. Blevins's testimony is not harmless.

## C.  Medical Opinion of Treating Physician Christina Milano, M.D.

Plaintiff next argues that the ALJ improperly rejected the opinion of treating physician

Christina Milano, M.D. The ALJ is responsible for resolving conflicts in the medical record,

including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th

Cir. 2008). The Ninth Circuit distinguishes between the medical opinions of three types of

physicians: treating physicians, examining physicians, and non-examining physicians. A treating

physician's opinion generally carries greater weight than the opinion of non-treating physicians.

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Holohan v. Massanari*, 246 F.3d 1195, 1202

(9th Cir. 2001); 20 C.F.R. § 404.1527(d). A treating doctor's opinion that is not contradicted can

be rejected only for "clear and convincing" reasons. *Holohan*, 246 F.3d at 1202 (citing

*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *Baxter v. Sullivan*, 923 F.2d 1391, 1396

(9th Cir. 1991).

If a treating physician's opinion is contradicted by the opinion of another physician, the

ALJ must provide "specific and legitimate" reasons supported by substantial evidence in the

record for discrediting the treating doctor's opinion. *Holohan*, 246 F.3d at 1202;

*Lester*, 81 F.3d at 830. In addition, the regulations give more weight to opinions that are explained than to those that are not and to the opinions of specialists concerning matters relating to their specialty over that of non-specialists. *Holohan*, 246 F.3d at 1202; 20 C.F.R. §§ 404.1527(c)(3)-(c)(5), 416.927(c)(3)-(c)(5). The treating physician's opinion is nonetheless entitled to deference and must be weighted using all the factors provided in § 20 C.F.R. 404.1527. *Id*. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1039. An ALJ effectively rejects an opinion when he ignores it. *Smolen*, 80 F.3d at 1286.

Dr. Milano has been Plaintiff's primary care physician since 2008. AR 425. Dr. Milano opined that Plaintiff was capable of a low stress job and though she found Plaintiff's prognosis to be stable on medication, she stated that Plaintiff suffers from severe fatigue caused by both biological disease and side effects from necessary medications. AR 425-28. Dr. Milano opined that Plaintiff would need to work at a reduced pace and would likely miss four or more days per month due to her impairments. AR 425, 429.

The ALJ gave only "some weight" to Dr. Milano's opinion. AR 21. Instead, the ALJ gave significant weight to the opinions of the consultative examining physicians, John Ellison, M.D., and Gary Sacks, M.D., who both assessed limitations but made no comment on Plaintiff's ability to function in a work setting. AR 20-21. The ALJ also gave significant weight to the opinions of State agency consultative physicians and psychologists Jacqueline Farwell, M.D., and Martin Kehrli, M.D., who considered the report of Dr. Sacks. *Id*.

As a threshold matter, Dr. Milano's opinion is squarely contradicted by non-examining physicians Drs. Farwell and Kehrli, who found no evidence of inability to perform past work; and to a lesser degree by examining physicians Drs. Ellison and Sacks, who opined that Plaintiff had normal memory and exaggerated her symptoms. AR 20-21, 81-90, 93-104, 342-44, 345-48. The ALJ was therefore required to provide specific, legitimate reasons for giving only "some weight" to Dr. Milano's controverted opinion. *Lester*, 81 F.3d at 830.

The ALJ gave only "some weight" to Dr. Milano's opinion for two reasons: (1) Dr. Milano's opinion was inconsistent with the medical evidence in the record; and (2) there was no evidence to support a finding that Plaintiff's impairments would cause her to have multiple absences from work per month. AR 21.

### 1.    Inconsistency with the Objective Medical Evidence in the Record

The ALJ found that Dr. Milano's opinion was not consistent with the medical evidence of the record, including improvement of Plaintiff's seizure disorder with medication, treatment of hypothyroidism, improvement of shoulder pain with medication, favorable response to medications for dysthymic disorder, and excellent response to Adderall, which improved energy levels and motivation. AR 20-21.

The ALJ points to the opinions of Dr. Ellison, who examined the Plaintiff in December of 2011; and Dr. Sacks, who examined the Plaintiff in June of 2011. AR 20. Dr. Ellison observed that Plaintiff had a depressed affect with normal memory, and with the exception of blood pressure of 170/100 and edema, all other findings were normal. AR 20, 343-44. Dr. Ellison diagnosed Plaintiff with depression and secondary fatigue, seizure disorder controlled by medication, hypothyroidism treated, hypertension, and obesity. AR 20, 344. Dr. Sacks observed that Plaintiff complained of memory impairment "in excess of observed impairment" and that her performance on a mental status exam seemed "somewhat dubious." AR 20, 346. Dr. Sacks

diagnosed Plaintiff with depression, somatization disorder, a history of hypothyroidism and

seizure disorder. AR 20, 348. Dr. Sacks ultimately found that Plaintiff had a Global Assessment

of Functioning Scale score of 58, indicating moderate symptoms or moderate difficulty in social,

occupational, or school functioning. *Id.* Neither doctor commented on Plaintiff's ability to

function in a work setting. AR 20.

      The ALJ also discusses the opinions of the State agency non-examining consultative

physicians and psychologists Drs. Farwell and Kehrli, who considered the report of Dr. Sacks.

AR 20-21, 81-90, 93-104, 345-48. Drs. Farwell and Kehrli opined that while Plaintiff had some

limitations in the performance of certain work activities, these limitations would not prevent

Plaintiff from performing past relevant work as actually performed. AR 87-90, 100-103.

Dr. Kehrli expressly disagreed with Dr. Milano's opinion and stated that Dr. Milano "relies

heavily on the subjective report of symptoms and limitations provided by the individual, and the

totality of the evidence does not support the opinion." AR 102. For the opinion of a non-treating

or non-examining physician to serve as substantial evidence to discount the opinion of a treating

physician, the non-treating or non-examining physician's opinion must be consistent with

independent clinical findings or other evidence in the record. *Morgan v. Comm'r of Soc. Sec.

Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

      Here, the opinions of Drs. Farwell and Kehrli are consistent with medical evidence in the

record. The medical record indicates that Plaintiff's seizure disorder is controlled by medications

and she has had no seizures after 2004. AR 20, 344. The record also indicates that Plaintiff's

hypothyroidism is treated. AR 20, 344. Treatment notes indicate that Plaintiff has sought care for

shoulder pain, with pain worse at night and mild improvement with NSAID medications.

AR 20, 208. Treatment notes from January of 2013 indicate that Plaintiff continued to

demonstrate a favorable response to medications for dysthymic disorder and an effective response to Adderall, which improved energy levels.[2] AR 20, 410-11.

In addition to the medical evidence of the other providers not supporting Dr. Milano's conclusion that Plaintiff would miss multiple days of work per month, as discussed above, Dr. Milano's treatment notes from the relevant time period also do not support this finding. Those notes show that although Plaintiff sought treatment for various issues, her fatigue and dysthymia generally improved with Adderall. The ALJ's determination that Dr. Milano's conclusion was inconsistent with the medical evidence in the record is supported by substantial evidence in the record.[3]

## 2. Lack of Record Evidence

As a second reason for giving Dr. Milano's opinion less weight, the ALJ stated that there is no evidence to support a finding that Plaintiff's impairments would cause her to have multiple absences from work per month. AR 21. Mr. Blevins's lay evidence, however, may be evidence that supports Dr. Milano's conclusions. AR 45-49. Specifically, Mr. Blevins made two statements that are relevant to this issue. First, Mr. Blevins stated that Plaintiff used to live with him and slept 15 to 18 hours per day and that he currently sees her three to four days per week and has not noticed a change in her energy level. AR 47. This statement may indicate that

---

[2] Additionally, Plaintiff contends that Drs. Farwell and Kehrli's exams did not consider evidence of how Adderall affected Plaintiff's work functioning, and therefore the Commissioner employs impermissible post hoc rationalization. The Adderall, however, at the very least, *improved* Plaintiff's work functioning. Because the reviewing physicians found Plaintiff capable of performing past relevant work without evidence of improvement in energy levels, it is immaterial whether they considered Plaintiff's improvement of conditions while taking Adderall.

[3] Although the ALJ provided this specific, legitimate reason for discounting Dr. Milano's testimony, because the Court remands this case so that the ALJ may properly consider the testimony of Mr. Blevins and this lay testimony may affect the ALJ's analysis of the weight to give Dr. Milano's opinion, the ALJ may need to reconsider Dr. Milano's opinion.

Plaintiff continues to suffer from extreme fatigue and would need to work at a reduced pace despite her prescription to Adderall. Second, when asked about Plaintiff's ability to concentrate, Mr. Blevins stated "she has very bad memory . . . . she doesn't seem to be able to recall a whole lot." *Id.* This statement also may indicate that Plaintiff continues to have trouble with memory and concentration while on Adderall. The Court has found that the ALJ improperly ignored Mr. Blevins's testimony. The ALJ should reevaluate Dr. Milano's medical opinion in light of Mr. Blevins's lay testimony to the extent the ALJ finds that Mr. Blevins's testimony so requires.

**D.  Remand for Further Proceedings and Credit-As-True Doctrine**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210  (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). It has been described by the United States Court of Appeals for the Ninth Circuit as follows:

> [The Ninth Circuit has] devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the

> record has been fully developed and further administrative
> proceedings would serve no useful purpose; (2) the ALJ has failed
> to provide legally sufficient reasons for rejecting evidence,
> whether claimant testimony or medical opinion; and (3) if the
> improperly discredited evidence were credited as true, the ALJ
> would be required to find the claimant disabled on remand.

*Id.* at 1020.

Ordinarily, if all three of these elements are satisfied, a district court must remand for a calculation of benefits. *Id.* If, however, "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," the district court retains the "flexibility" to remand for further proceedings even when these elements are satisfied. *Id.* at 1021; *see also Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (remanding for further proceedings without analyzing whether the three factors are met "because, even assuming that they are, we conclude that the record as a whole creates serious doubt as to whether Claimant is, in fact, disabled").

As explained above, the ALJ failed to provide legally sufficient reasons for discrediting the lay witness testimony of Mr. Blevins in analyzing whether Plaintiff has the residual functional capacity to perform light work. The Court finds that outstanding issues remain regarding the extent of Plaintiff's limitations caused by her severe impairments, Plaintiff's appropriate RFC, and whether Plaintiff can perform past relevant work or other work that exists in sufficient numbers in the national economy. Thus, remand for immediate award of benefits is not appropriate. Upon remand, the ALJ shall appropriately consider Mr. Blevins's testimony and reevaluate the other credibility determinations and RFC if necessary.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

PAGE 20 – OPINION AND ORDER

DATED this 22nd day of February, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge